UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CHIARA BROOKE SQUILLACE,

                         Plaintiff,

                                                            **MEMORANDUM & ORDER**
         - against -                                            20-CV-1276 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Plaintiff Chiara Brooke Squillace brings this action under 42 U.S.C. § 405(g), seeking judicial

review of the Social Security Administration's ("SSA") denial of her claim for Supplemental Security

Income ("SSI").  Plaintiff moved for judgment on the pleadings.  (Dkt. 13.)  For the reasons set forth

below, the Court grants Plaintiff's motion and remands for further proceedings consistent with this

Memorandum and Order.

## BACKGROUND

**I.      Procedural History**

        On August 19, 2016, Plaintiff filed an application for SSI, alleging disability beginning

April 1, 2007.  (Tr. 10, 214.)[1]  The claim was initially denied on October 27, 2016.  (Tr. 131–33.)

Thereafter, Plaintiff filed a written request for a hearing on December 9, 2016.  (Tr. 137.)  On

November 5, 2018, Plaintiff appeared in Central Islip, New York for a video hearing before

Administrative Law Judge Brian Battles (the "ALJ"), who was presiding from Alexandria,

Virginia.  (Tr. 10.)  Plaintiff was represented by counsel Julie Yodice.  (*Id.*)  During the hearing, a

vocational expert, Richard Riedl, testified by telephone.  (*Id.*)  By decision dated December 17,

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.
(Dkts. 11, 11-1, 11-2, 11-3.)

2018, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from August 19, 2016, the date of her application, through the date of the ALJ's decision.  (Tr. 19, 192–94.)   On January 2, 2020, the ALJ's decision became final when the Appeals Council of the SSA's Office of Appellate Operations denied Plaintiff's request for a review of the ALJ's decision.  (Tr. 1–5.)  Thereafter, Plaintiff timely[2] commenced this action.

## II.     The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry.  The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).  First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If the answer is yes, the plaintiff is not disabled.  *Id.*  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment.  *Id.* § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities."  *Id.* § 416.922(a).  If the plaintiff

---

[2] According to Title 42, United States Code, Section 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on January 7, 2020 (*i.e.*, five days after Plaintiff's request to appeal the ALJ's decision was denied on January 2, 2020) and that Plaintiff's filing of the instant action on March 9, 2020—60 days later—was timely.  (*See generally* Complaint, Dkt. 1.)

does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii). But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 416.920(a)(4)(iii); *see also id.* pt. 404, subpt. P, app. 1. If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 416.920(a)(4)(iii). On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 416.945(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her application date of August 19, 2016. (Tr. 12.) At step two, the ALJ determined that Plaintiff had the following severe impairments: vasculitis/Raynaud's phenomenon,[3] lupus, and

---

[3] "Vasculitis," which can occur in the context of lupus, refers to a group of diseases distinguished by inflammation of the blood vessels that can cause narrowing and weakness of the vessel lining, and can damage the tissues or organs supplied by those blood vessels. *See* HSS, https://www.hss.edu/condition-list_vasculitis.asp (last visited Sept. 27, 2021). "Raynaud's phenomenon," which also can be linked to lupus, causes areas of the body, including fingers and

left renal vein compression.  (Tr. 13.)  The ALJ also noted the following impairments that were

not shown to be severe: ovarian cyst, headache with numbness and tingling, glomerulonephritis,[4]

attention-deficit hyperactivity disorder ("ADHD"),[5] deviated septum, and gastro-esophageal

reflux disease.  (*Id.*)  At step three, the ALJ found that Plaintiff's impairments do not meet or

medically equal any of the listed impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(*Id.*)  The ALJ then determined that Plaintiff has the RFC to perform sedentary work as defined in

20 C.F.R § 416.967(a)

> [e]xcept [Plaintiff] can occasionally push and pull and operate foot controls with
> the bilateral lower extremities; occasionally push and pull and operate hand controls
> with the bilateral upper extremities; occasionally climb ramps or stairs; should
> never climb ladders, ropes, or scaffolds; never work in an area that has concentrated
> exposure to extreme heat or cold; never work in hazardous environments such as at
> unprotected heights or around moving mechanical parts; is limited to unskilled,
> simple, routine, and repetitive tasks; and can work in a low stress job (defined as
> making only occasional decisions and tolerating only occasional changes in the
> work setting).

(Tr. 14.)  Then, at step four, the ALJ concluded that Plaintiff could not perform her past relevant

work as a nursery school attendant.  (Tr. 17.)  Finally, at step five, the ALJ found that Plaintiff

could perform other work that exists in substantial numbers in the national economy, including

---

toes, to become numb and cold in response to cold temperatures and stress because blood flow is
limited due to the narrowing of small arteries.  *See Raynaud's Disease*, MAYO CLINIC,
https://www.mayoclinic.org/diseases-conditions/raynauds-disease/symptoms-causes/syc-
20363571 (last visited Sept. 27, 2021).

[4] "Glomerulonephritis" is inflammation of the tiny filters in the kidneys and occurs on its
own or as part of another disease, such as lupus or diabetes.  *See Glomerulonephritis*, MAYO
CLINIC,         https://www.mayoclinic.org/diseases-conditions/glomerulonephritis/symptoms-
causes/syc-20355705 (last visited Sept. 28, 2021).

[5] "ADHD" or "Attention-Deficit/Hyperactivity Disorder" is a neurodevelopmental
disorder marked by difficulty paying attention, controlling impulsive behaviors, or being overly
active.  *See Attention-Deficit/Hyperactivity Disorder (ADHD)*, CENTERS FOR DISEASE CONTROL
AND PREVENTION, https://www.cdc.gov/ncbddd/adhd/facts.html (last visited Sept. 27, 2021).

packager, production inspector, and addresser.  (Tr. 18–19.)  The ALJ thus concluded that Plaintiff was not disabled.  (Tr. 19.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151 (citations omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (alterations and internal quotation marks omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.* (citation omitted).  However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam).

## DISCUSSION

Plaintiff contends that (1) the ALJ erred in determining that Plaintiff's diagnosis does not meet or medically equal Listing 14.02; and (2) the RFC determination is not supported by substantial evidence.  (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 13-1, at 5, 18–25.)  For the reasons set forth below, the Court grants

Plaintiff's motion and remands for the ALJ to develop the medical record regarding the RFC determination and to explain the RFC determination with greater specificity. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13 (E.D.N.Y. Sept. 28, 2017) ("In addition to its authority to affirm, modify, or reverse a final decision, the Court may remand the case for the ALJ to further develop the record, resolve conflicts and ambiguities, or elucidate his or her rationale.").

## I.   Listing 14.02 Determination

Plaintiff alleged that she meets Listing 14.02, systemic lupus erythematosus[6] ("SLE"). (Tr. 13, 281.) An individual meets this listing if there is evidence of the following:

> (A) Involvement of two or more organs/body systems, with: 1. One of the organs/body systems involved to at least a moderate level of severity; and 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> OR
>
> (B) Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: 1. Limitation of activities of daily living; 2. Limitation in maintaining social functioning; 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.02 (reformatted). "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). As such, the "medical criteria defining the listed impairments" is "at a

---

[6] "Systemic Lupus Erythematosus" is an autoimmune disease in which the immune system attacks its own tissues, causing widespread inflammation and tissue damage in the affected organs, and can affect the joints, skin, brain, lungs, kidneys, and blood vessels. *See Systemic Lupus Erythematosus (SLE)*, CENTERS FOR DISEASE CONTROL AND PREVENTION https://www.cdc.gov/lupus/facts/detailed.html (last visited Sept. 27, 2021).

higher level of severity than the statutory standard." *Id.* "The reason for this difference . . . is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.*

Here, the ALJ found that "the records do not support a finding of 'severe' fatigue and malaise" because Plaintiff was able to "maintain significant employment" during the periods in question; reported she would exercise three to four days per week, primarily by walking; and, in March 2017, a physician noted no complaints of pain and characterized Plaintiff's lupus symptoms as episodic flare-ups with symptom-free periods in between, as well as joint stiffness lasting about 45 minutes after arising in the morning and shortness of breath. (Tr. 13.) In addition, the ALJ determined, that Plaintiff failed to establish marked limitation in activities of daily living, in part, because the consultative examiner's statements regarding such activities were based solely on Plaintiff's reports and were "inconsistent with a physical examination that found little objective evidence of limitation." (Tr. 13–14.) In sum, the ALJ concluded that Plaintiff's reports of limitation "are inconsistent with the objective findings." (Tr. 14.)

Plaintiff has a "complex medical history" that includes, among other things, SLE, Class IV lupus glomerulonephritis, systemic vasculitis, Raynaud's phenomenon, SVT,[7] HTN,[8] and ADHD. (Tr. 831; *see also* Tr. 799, 817–18, 852, 868.) Her medical records reflect a history of fatigue that, at times, was reported as "chronic" or "severe" (Tr. 308–09, 869, 883, 908, 917, 959, 1148) and

---

[7] "SVT" or "supraventricular tachycardia" is an abnormally fast or erratic heartbeat. *See Supraventricular tachycardia*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/supraventricular-tachycardia/symptoms-causes/syc-20355243 (last visited Sept. 27, 2021).

[8] "HTN" or "hypertension" refers to high blood pressure. *See High Blood Pressure (Hypertension)*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/4314-hypertension-high-blood-pressure (last visited Sept. 27, 2021).

occasional "malaise" (Tr. 604, 933), but do not reflect a history of fever[9] or involuntary weight loss. While Plaintiff's medical records also describe other symptoms, including joint and body pain, headache, numbness, and dizziness (Tr. 308–09, 817, 852, 869, 883, 917, 923, 933), these are not among the "constitutional symptoms or signs" included in the listed impairment for SLE. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.02.

Considering this evidence, together with other medical evidence reflecting generally normal clinical findings and "symptom-free periods in between flare-ups" (*see, e.g.*, Tr. 958–59, 964, 966–67, 987–90, 1027, 1031), as well as Plaintiff's reports of working jobs that required standing and some amount of physical exertion (Tr. 64–65 (describing retail sales job where she was on her feet most of the day), 66–67 (describing daycare job that required a 50-50 split of standing and sitting, and required lifting toddlers), walking for exercise (Tr. 819, 873, 887, 924, 971, 1009), and less than 45 minutes of joint stiffness when she first wakes up in the morning (*see* Tr. 77, 964, 967, 970), the Court finds the ALJ's conclusion that Plaintiff does not meet the requirements of Listing 14.02 to be reasonable and supported by substantial evidence. *See Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) ("Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks and citation omitted)).

The Court acknowledges that the record contains somewhat contradictory evidence related to some of the ALJ's findings. For example, while Plaintiff's medical records reflect that she reported walking three to four days per week for exercise (*see, e.g.*, Tr. 873, 971, 1009), which the ALJ found demonstrated that Plaintiff's fatigue and malaise were not severe (Tr. 13), during the

---

[9] There is some isolated history of fever in association with other conditions, such as influenza or infection. (Tr. 868, 907, 970.)

hearing, Plaintiff testified that she merely "walk[s] around" with her dog (Tr. 84), can walk "half a mile at most" but "[t]hat's pushing it" (Tr. 77), and that she stopped going to college classes in person because it was "very strenuous" to get around the large campus that has a lot of stairs (Tr. 88–89).  However, "[i]t is not the place of the district court to weigh the credibility of complex, contradictory evidence, or reconsider anew whether the claimant is disabled," *see Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) (citing *Schaal v. Apfel,* 134 F.3d 496, 500 (2d Cir. 1998)), and "[a] reviewing court must 'keep in mind that it is up to the agency, and not the court, to weigh the conflicting evidence in the record,'" *Butler v. Comm'r of Soc. Sec.*, No. 07-CV-4972 (NG), 2009 WL 1605352, at *4 (E.D.N.Y. June 5, 2009) (brackets in original omitted) (quoting *Clark v. Comm'r,* 143 F.3d 115, 118 (2d Cir. 1998)).  Thus, the Court will not disturb the ALJ's finding that Plaintiff failed to carry her burden at step three to demonstrate that she meets the "higher level of severity," *Sullivan*, 493 U.S. at 532, required by Listing 14.02.

## II.    RFC Determination

Although the ALJ's finding at step three is supported by substantial evidence, the Court finds that the ALJ failed to adequately develop the record and explain the RFC determination.  Thus, remand is required for the reasons set forth below.

Only two medical professionals provided opinion evidence in this matter.  (Pl.'s Mot., Dkt. 13-1, at 21.)  The first opinion is from an October 10, 2016 consultative exam performed by Dr. Kanista Basnayake.[10]  (Tr. 956–60.)  Dr. Basnayake noted, among other things, that Plaintiff complained of lupus-induced joint pain that was constant, aching, 9 out of 10 on a pain scale, mostly in her hips and knees, and got worse with activity.  (Tr. 956.)  Dr. Basnayake also noted that Plaintiff's activities of daily living included showering and dressing daily, cooking two to

---

[10] Both the ALJ and Plaintiff erroneously refer to Dr. Basnayake as "Dr. Kasnayake."

three days a week, and cleaning and doing laundry once a month. (Tr. 957.) Dr. Basnayake conducted an examination of Plaintiff, finding, among other things, that Plaintiff could walk without difficulty, do a full squat, get on and off the exam table without assistance, had full range of motion in joints, no evidence of muscle atrophy, intact hand and finger dexterity, and 5/5 bilateral grip strength. (Tr. 958–59.) Dr. Basnayake offered the following medical source statement: "Due to joint pain, especially hips and knees, and fatigue[,] [Plaintiff] has mild to moderate limitations to prolonged standing, walking, climbing, bending, lifting, carrying, and kneeling." (Tr. 959.) The ALJ assigned "some weight" to Dr. Basnayake's opinion, who, he explained, "found no neurologic or musculoskeletal abnormalities on examination but opined limitation with exertional activities such as standing, lifting, and carrying." (Tr. 17.) The ALJ discounted Dr. Basnayake's opinion, in part, because the limitations were based on Plaintiff's subjective reports of pain and fatigue rather than objective findings.

The second opinion, rendered nearly two years after Dr. Basnayake's examination, is a medical source statement by Roy Prashad, DO. (Tr. 1148–50.) Dr. Prashad identified Plaintiff's symptoms as "fatigue, joint pain, headaches, abdominal pain, joint swelling, [and] rash," with "moderate" to "severe" pain; noted medication side effects of "dizziness," "prolonged fatigue," and "drowsiness"; and made the following clinical and objective findings: "severe Raynaud's vasculitis of toes with digital necrosis [and] [h]istory of lupus nephritis." (Tr. 1148.) Dr. Prashad indicated that, in his professional opinion, Plaintiff is functionally disabled from all gainful employment "given the frequent occurrence of symptoms affecting functionality and affecting ability to be gainfully employed" because "she would be frequently absent from work." (Tr. 1149.) Further, Dr. Prashad opined that Plaintiff's impairments would produce "bad days," causing her

to be absent from work "5 or more" days per month, and offered the following opinions regarding

Plaintiff's functional limitations in a workplace during an 8-hour workday, five days per week:

- Ability to work:          1 to 2 hours
- Ability to walk:          ½ block
- Stand at one time:        15 min.
- Sit at one time:          30 min.
- Stand in workday:         None
- Sit in workday:           1 hour
- Lift (occasionally):      5 lbs.
- Lift (frequently):        None.

(Tr. 1149–50.)  Dr. Prashad also opined that Plaintiff's functional limitation would include:

- Rarely:           Bend; Stoop; Balance; Need to elevate legs (below heart);

- Occasionally:     Fine Manipulation (all fingers); Gross Manipulation (both hands);
                    Reach Out (both arms); Reach Overhead (both arms);

- Frequently:       Need to elevate legs (above heart); Need to shift positions; Need to
                    take unscheduled breaks; Need to lie down or rest.

(Tr. 1150.)[11]  In addition, Dr. Prashad found that Plaintiff would have a "low" ability to tolerate

work stress.  (*Id.*)

    The ALJ assigned "little weight" to Dr. Prashad's opinion, which he generally found to be

unsupported by or inconsistent with the record.  (Tr. 16–17.)  For example, the ALJ found that Dr.

Prashad noted that Plaintiff "has diagnoses that are not substantiated in the medical documentation,

such as [ADHD], gangrene, and fibromyalgia."  (Tr. 16.)  This is a questionable basis to discount

Dr. Prashad's opinion, given that the medical records do, in fact, reflect evidence of all three

diagnoses.  (*See, e.g.*, Tr. 596 (noting that Plaintiff was "on Ritalin[12] for concentration"); 617

---

[11]   "Rare" means 1–5% of the time; "Occasional" means 6–33% of the time; "Frequent"
means 34–66% of the time.  (Tr. 1150.)

[12]   Ritalin  is  used  to  treat  ADHD.   *See  Ritalin*,  DRUGS.COM,
https://www.drugs.com/ritalin.html (last visited Sept. 27, 2021).

("impending gangrene"), 882 (ADHD); Tr. 1007 (same); Tr. 1001 (fibromyalgia).)  The ALJ also ascribed "little weight" to Dr. Prashad's opinions about Plaintiff's limitations in the workplace, which he found to be "inconsistent with testing that reveals few objective abnormalities and episodic flare-up of lupus."  (Tr. 16.)  However, the ALJ conceded that he was "unable to evaluate whether [Dr. Prashad's] opinion is consistent with and based upon Dr. Prashad's own examination findings, because his records do not appear to have been made part of the administrative record."  (Tr. 16–17.)  This too is a questionable basis to discount Dr. Prashad's opinion given the ALJ's admission that the record is incomplete.

It is well-established in the Second Circuit that an ALJ presiding over a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)).  "The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record."  *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks and citation omitted).  Moreover, "if the ALJ was unsatisfied with the available medical opinions, it was his duty to develop the record further rather than settle on other, unsupported RFC assessments."  *Lao v. Comm'r of Soc. Sec.*, No. 18-CV-7462 (FB), 2020 WL 4194210, at *3 (E.D.N.Y. July 21, 2020) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2010) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings.")).

Here, the ALJ effectively admits that he was unsatisfied with Dr. Prashad's medical opinion because the ALJ was "unable to evaluate" the basis for Dr. Prashad's numerous functional

limitation findings due to gaps in the administrative record.  (*See* Tr. 16–17.)  During the hearing, the ALJ noted that Dr. Prashad's opinion appeared to be missing the final signature page (Tr. 56–57), but then failed to develop the record with respect to the substance of Dr. Prashad's opinion, including, for example, requesting Dr. Prashad's missing records or calling Dr. Prashad to testify about whether his functional limitation findings were based on his examination of Plaintiff.  This failure to develop the record regarding Dr. Prashad's opinion is especially significant because, although Plaintiff curiously states in her brief that Dr. Prashad is not a "treating physician" (Pl.'s Mot., Dkt. 13-1, at 21), Dr. Prashad is referenced in the medical records as providing rheumatology care to Plaintiff in and around July 2018[13] (*see* Tr. 1146 (noting that Plaintiff will have a "close rheumatology [follow up] with Dr. Prashad as [Plaintiff] was being treated for acute SLE flare"), Tr. 1163 (identifying "Dr. Roy Prashad" as Plaintiff's "[o]utpatient rheumatologist")).  Thus, it seems likely that Dr. Prashad could provide records and testimony in support of his medical source statement and related to the rheumatology care he provided to Plaintiff, all of which are critical to ensuring a complete record and a well-founded RFC determination—especially since only two medical professionals gave opinions in this medically complex case.  Without further development of the record on this front, the Court cannot determine that the RFC finding is supported by substantial evidence.

In addition to failing to fully develop the record with respect to Dr. Prashad's opinion, the ALJ also failed to identify any medical opinion in support of his RFC determination.  "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that

---

[13] Dr. Prashad did not indicate the "Frequency & Length of Contact" with Plaintiff in the Medical Source Statement (Tr. 1148), so the duration of any treatment he provided to Plaintiff is unclear.

of a physician." *Lao*, 2020 WL 4194210, at *3 (quoting *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010)).  "An ALJ commits legal error when he makes a [RFC] determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities." *Van Dyne v. Saul*, No. 20-CV-260 (MKB), 2021 WL 1210460, at *15 (E.D.N.Y. Mar. 31, 2021) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)). Further, while the ALJ may "choose between properly submitted medical opinions," he or she may not "set his [or her] own expertise against that of physicians who submitted opinions." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (citation omitted).

Here, the ALJ determined that Plaintiff has the RFC to perform "sedentary work," which, by definition, involves lifting up to 10 pounds at a time and "a certain amount of walking and standing," *see* 20 C.F.R. § 416.967(a), but provided no limitations regarding lifting, standing, or the need for breaks.  The RFC determination is not supported by Dr. Prashad's opinion that, among other things, Plaintiff will frequently need to elevate her legs above her heart, shift positions, take unscheduled breaks, lie down or rest, and cannot work for more than one to two hours, stand for more than 15 minutes, or lift more than five pounds.  (Tr. 1150).  The RFC determination is also not supported by Dr. Basnayake's opinion, in which Dr. Basnayake found "mild to moderate limitations to prolonged standing, walking, climbing, bending, lifting, carrying, and kneeling" (Tr. 959), but did not opine as to how much weight Plaintiff could carry, or how much walking and standing she might tolerate.  Aside from these medical opinions, the record is devoid of any other medical opinions or evidence that addresses Plaintiff's functional capacity in the workplace.  (*See* Tr. 15–16 (summarizing medical evidence).)

Thus, in finding that "the objective evidence from medical examinations provides few outward signs of limitation" (Tr. 17), it appears that the ALJ improperly "interpreted the raw

medical evidence to arrive at the conclusion that Plaintiff was physically capable of" sedentary work without the support of any medical opinion. *Santangelo v. Saul*, No. 18-CV-6199 (CJS), 2019 WL 4409339, at *10 (W.D.N.Y. Sept. 16, 2019) (finding that "[t]he only discussion of Plaintiff's ability to lift, stand, and walk is from her hearing testimony" and "[t]he ALJ's discussion of the medical records does not touch on these physical requirements for light work"); *see Van Dyne v. Saul*, No. 20-CV-260 (MKB), 2021 WL 1210460, at *15 (E.D.N.Y. Mar. 31, 2021) ("Instead of developing the record, the ALJ concluded based on the examination findings of normal extremity strength and gait that there was no basis to conclude that Plaintiff cannot lift and carry up to twenty pounds occasionally and up to ten pounds frequently.  However, the ALJ is not permitted to substitute his own lay opinion of the medical evidence for the medical opinion of an acceptable medical source." (record citation omitted)); *Balaguer Perez v. Berryhill*, No. 17-CV-3045 (JMA), 2019 WL 1324949, at *6 (E.D.N.Y. Mar. 25, 2019) ("Without a supporting medical opinion of Plaintiff's functional limitations, the ALJ's RFC determination that Plaintiff was capable of sedentary work constituted an impermissible interpretation of bare medical findings and is not supported by substantial evidence." (internal quotation marks and citations omitted)); *Guarino v. Colvin*, No. 14-CV-00598 (MAT), 2016 WL 690818, at *2 (W.D.N.Y. Feb. 22, 2016) ("Here, the ALJ had no medical source opinions on which to rely in formulating his RFC finding. As such, his RFC determination constituted an impermissible interpretation of bare medical findings." (collecting cases)).  On remand, the ALJ must identify a medical opinion that supports the RFC determination described in his decision or any new RFC determination that results from further development of the record.

Finally, the need for a supporting medical opinion is particularly important here because Plaintiff offered extensive testimony about how her symptoms impact her ability to sustain

employment.  Plaintiff testified that during a "severe" flare-up she "cannot do anything" and explained: "I cannot move.  I feel like I'm [on] fire.  I feel like I got hit by a car.  All my joints hurt, everything.  Like, there's no – like, the only thing that probably does not hurt is my face.  Like, it's every joint in my body hurts."  (Tr. 73.)  Severe flare-ups happen two to three times a month, lasting anywhere from 30 minutes to the full day (Tr. 75), and can occur spontaneously due to lupus, or be triggered by stress, a cold, or "exerting extra energy" (Tr. 75, 93–94).  As a result, when Plaintiff had a job, she frequently called out sick; sometimes she would leave work early, other times she would drive to work and then call to say that she could not go inside.  (Tr. 67–68.)  Plaintiff testified that she left all of her jobs "due to [her] illness" (Tr .76) and that all of her bosses told her that they could not "keep putting [her] on schedules if [she was] not going to be dependent [sic] and call out" (Tr. 94; *see also* Tr. 253 (describing how Plaintiff left her retail jobs because she "called out too many times" and was "unable to do too many days in a row")).  In reaching the RFC determination, the ALJ acknowledged Plaintiff's testimony that she left her prior job as a nursery school attendant "due to absences and flare-ups with her medical conditions" (Tr. 15), but did not explain why the RFC determination was nevertheless appropriate given this history, nor address the vocational expert's testimony that an individual who would be "absent more than an average of one time per month, month after month" would be precluded from working (Tr. 102).

The ALJ "must discuss the relevant evidence and factors crucial to the overall [RFC] determination with sufficient specificity to enable reviewing courts to decide whether its determination is supported by substantial evidence."  *Pellot v. Comm'r of Soc. Sec.*, No. 18-CV-03337 (AMD), 2019 WL 3500919, at *1 (E.D.N.Y. July 31, 2019) (quoting *Estrada ex rel. E.E. v. Astrue*, No. 08-CV-3427 (DLI), 2010 WL 3924686, at *3 (E.D.N.Y. Sept. 29, 2010)).  "[W]here

an ALJ does not discuss the relevant evidence and factors with sufficient specificity, the court must remand the case. *Id.* (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand is particularly appropriate where, as here, we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision.")). Such circumstances are present here. The AJL did not explain with sufficient specificity why, despite Plaintiff's and the vocational expert's testimony described above, the RFC determination is supported by the evidence. On remand, the ALJ should provide a more specific explanation of this issue.

## CONCLUSION

For the reasons explained herein, the Court grants Plaintiff's motion for judgment on the pleadings. The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: September 29, 2021
        Brooklyn, New York